IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01775-PAB-KLM

TANYA DREESEN,

    Plaintiff,

v.

THE DENVER NEWSPAPER AGENCY, a Colorado corporation,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on defendant's motion for summary judgment ("Def.'s Mot.") [Docket No. 26]. The motion is fully briefed and ripe for disposition.

## I. BACKGROUND[1]

The Denver Newspaper Agency (the "Agency") recruited Ms. Tanya Dreesen in March 2006 as an Assistant Vice President of Display Advertising and, a few months later, promoted her to a Vice President position in the marketing and advertising department. In mid-December 2006, Ms. Dreesen went out on a sixteen-week maternity leave. Later that same month, Mr. Greig Smith was hired to become the Senior Vice President of Sales and Marketing, becoming Ms. Dreesen's direct supervisor. Although the Agency, along with the rest of the newspaper industry, was struggling financially, Ms. Dreesen was recognized by many of her colleagues as being

---

[1]The following brief factual background reflects the record viewed in the light most favorable to plaintiff. Additional facts will be discussed to the extent they are relevant to the legal analysis below.

highly qualified and having strong skills.[2]

Not long after her return from maternity leave, Ms. Dreesen's title was changed and certain of her responsibilities were taken away. Around the same time, Mr. Smith broached the subject of terminating Ms. Dreesen with Mr. Harry Whipple, the Chief Executive Officer of the Agency. Mr. Whipple, in a July 1, 2007 email, inquired as to the grounds for her dismissal. Mr. Smith responded "I am not sure. Job elimination/ re[-]class[ification]." Docket No. 34-17. Over the course of 2007, Mr. Smith continued to express his desire to terminate Ms. Dreesen.

Sometime in November 2007, Ms. Dreesen became pregnant again. About the same time, Ms. Dreesen saw Mr. Smith looking at a bottle of prenatal vitamins on her desk. Moreover, Ms. Jennifer Chelwick, a colleague of Ms. Dreesen, testified that Mr. Smith "made some comment about [Ms. Dreesen] being . . . pregnant again." Docket 34-30 at 39. Ms. Dreesen "knew that [she] was pregnant . . . in November 2007 . . . . because [she] began taking home pregnancy tests in November and continuing into December 2007. All of these pregnancy tests were positive. [Her] last home pregnancy test was taken on or about December 14, 2007." *See* Docket No. 34-6 ("Dreesen Aff.") at 1, ¶ 5. She did not tell anybody at work that she was pregnant. In early January 2008, Mr. Smith terminated her employment, citing the need to cut costs.

After Ms. Dreesen's termination, the Agency did not fill a position with the same title Ms. Dreesen held. Rather, Ms. Dreesen's responsibilities were divided up among others. Then, in June and again in October of 2008, the Agency hired two new vice

---

[2] Mr. Smith testified to Ms. Dreesen's strong qualifications. *See* Docket No. 34-4 ("Smith Depo.") at 51-64.

presidents for Ms. Dreesen's former department, increasing the number from three to four.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Id.*

## III. DISCUSSION

### A. Pregnancy Discrimination

The Agency argues that there is no evidence suggesting Ms. Dreesen was terminated because of her pregnancy.[3] A pregnancy discrimination claim is analyzed

---

[3]Ms. Dreesen's complaint raises two claims for relief, the first arising under Title VII and the second based on the Family and Medical Leave Act. The first is entitled

3

the same as other Title VII claims, following the familiar *McDonnell Douglas* burden-shifting framework. *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1148-49 (10th Cir. 1999). The first stage requires a plaintiff to present a prima facie case of pregnancy discrimination. The Tenth Circuit, in the context of pregnancy discrimination, has required a plaintiff to show "(1) she is within the protected class; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position remained open and was ultimately filled by a nonpregnant employee." *Id.* at 1148. The plaintiff's burden is "not onerous." *McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 922 (10th Cir. 2001). It is "'one of production, not persuasion; it can involve no credibility assessment.'" *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)).

Defendant argues that plaintiff has failed to demonstrate that her position remained open.[4] The correct articulation of the fourth prong is a matter of some dispute. In *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220 (10th Cir. 2000), the Tenth Circuit surveyed the confusion over whether this prong merely requires the terminated employee's position to have remained open or whether, as

---

"Gender/Pregnancy Discrimination." Compl. [Docket No. 1] at 6. The record, and the evidence therein proffered by plaintiff, however, is almost exclusively focused on the alleged pregnancy discrimination. While plaintiff argues that there is sufficient evidence of gender discrimination distinct from the evidence of pregnancy discrimination to survive summary judgment, the Court disagrees. Therefore, to the extent plaintiff's first claim for relief survives defendant's motion, it will do so as a claim of pregnancy discrimination.

[4]In addressing why it believes plaintiff has failed to make out a prima facie case, defendant does not contest that Ms. Dreesen "was doing satisfactory work" and "was discharged."

stated in *Atchley*, the position must have been filled by a person of non-protected status. *Id.* at 1227-29. The court concluded that "a plaintiff alleging discriminatory discharge ordinarily need not show that a person outside of the protected class was hired to fill his former position in order to make out a prima facie case of discrimination," *id.* at 1229, suggesting the *Atchley* formulation is incorrect insofar as it requires a showing that the position was ultimately filled by a non-pregnant individual under all circumstances. *See id.* ("[Plaintiff] need only show that: (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge.").

Moreover, and contrary to defendant's arguments, there is no absolute requirement that plaintiff make out her prima facie case by showing the position remained open. The final element of the *McDonnell Douglas* framework is a "flexible one." *Plotke*, 405 F.3d at 1100; *see Hysten v. Burlington Northern and Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (2002) ("[T]he Supreme Court in *Furnco Construction Corp. v. Waters* emphasized that *McDonnell Douglas* never intended to set 'an inflexible rule.'" (quoting 438 U.S. 567, 575 (1978)). Plaintiff "can satisfy the fourth element of her prima facie case in a number of ways." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 n.6 (10th Cir. 2000). The "Court recognized in *McDonnell Douglas* that although the articulation of the plaintiff's prima facie test might vary somewhat depending on the context of the claim and the nature of the adverse employment action alleged, the essential purpose served by a prima facie test remains the same," elimination of "'the most common nondiscriminatory reasons for the

plaintiff's rejection.'"  *Kendrick*, 220 F.3d at 1227 (citations omitted).[5]  In fact, though not the preferable approach in most cases, the Tenth Circuit "has, on occasion recited a more general test for determining if a plaintiff has established a prima facie case of discriminatory discharge."  *Id.* at 1227 n.6 (citing *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1416-17 (10th Cir. 1993) (which, according to the *Kendrick* court, "requir[ed] plaintiff to show: (1) she belongs to a protected class; (2) she was qualified for her job; and (3) she was terminated under circumstances giving rise to an inference of discrimination")); *Hysten*, 296 F.3d at 1181 ("We stress . . . that 'courts must be sensitive to the myriad of ways such an inference can be created.'" (quoting *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990)).

Plaintiff has come forward with evidence that her position was eliminated only insofar as no vice president held the precise title she did after her termination.  Not long after her termination, however, an additional vice president was hired for the same department, a department where titles and responsibilities appeared to often be in flux.  Moreover, plaintiff has made a sufficient initial showing that the restructuring was done specifically to terminate her, not simply to downsize.  In other words, even if there were a strict requirement that plaintiff show that the position was still open, the "evidence raises a genuine issue of material fact concerning whether her position was actually eliminated."  *Plotke*, 405 F.3d at 1100 n.9.  The Tenth Circuit "view[s] with suspicion a corporate restructuring justification used to counter a discrimination claim where the

---

[5] *See Hysten v. Burlington Northern and Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (2002) ("*McDonnell Douglas* defines the prima facie elements for the archetypal discrimination case, an employer's discriminatory failure to hire a qualified employee.").

plaintiff's position was the only one eliminated." *Id.* (citing *Atchley*, 180 F.3d at 1147-49). In *Atchley*, 180 F.3d at 1149, the Tenth Circuit cited *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 65 (2d Cir. 1995). In *Quaratino*, the Second Circuit made clear that "[e]mployers have the right to restructure jobs and job responsibilities, but they cannot use that process to implement discriminatory objectives." *Id.* "An employee may always show that her employer's decisions on restructuring – as applied to her – were made to displace her for impermissible reasons such as taking maternity leave." *Id.* Plaintiff has made such a showing.

Defendant also argues that plaintiff has failed to make out a prima facie case of pregnancy discrimination because there is no evidence that Mr. Smith knew she was within the protected class, i.e., pregnant. In support of this argument, defendant points to evidence that Ms. Dreesen had yet to confirm with a physician that she was pregnant at the time she now claims Mr. Smith knew she was pregnant. Defendant, however, has mischaracterized the evidence and the relevant issue. The record contains at least some evidence that Ms. Dreesen knew she was pregnant as of sometime in November 2007. But, here, that is of no moment. The record does not need to reveal proof that Mr. Smith – or, in fact, Ms. Dreesen – definitively *knew* she was pregnant. The record reveals a genuine issue of material fact regarding whether Mr. Smith suspected she was pregnant.

Defendant focuses all of its energies on the timing of Ms. Dreesen confirming her pregnancy with a doctor[6] and telling others of her pregnancy in relation to when Mr.

---

[6]Defendant implies that the first positive pregnancy test was conducted on December 14, 2007, by Ms. Dreesen's physician. *See* Def.'s Reply at 6 ("Dreesen's

Smith allegedly commented on Ms. Dreesen's pregnancy to Ms. Chelwick. That approach does not engage with the real implication of the evidence, viewed in the light most favorable to plaintiff, that Mr. Smith *suspected* Ms. Dreesen was pregnant again. Ms. Dreesen testified that Mr. Smith saw a bottle of prenatal vitamins in her office, and Ms. Chelwick testified at her deposition that Mr. Smith expressed his belief that Ms. Dreesen was pregnant again.

In light of this record evidence and defendant not having challenged plaintiff's prima facie case on any other grounds, the Court is satisfied that plaintiff has met "her *de minimis* prima facie burden." *Plotke*, 405 F.3d at 1101. Therefore, defendant must put forth a "legitimate, nondiscriminatory reason" for the plaintiff's termination. *Atchley*, 180 F.3d at 1148. The parties do not dispute that defendant has done so by identifying the need to cut costs. The burden then shifts back to the plaintiff to show that "pregnancy was a determinative factor in the defendant's employment decision" or that "the defendant's explanation for its action was merely pretext." *Id.* at 1148-49. Importantly, a showing of pretext is enough; the plaintiff need not have direct evidence that pregnancy was the actual reason for her termination. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) ("[A] showing of pretext *is* evidence which allows a jury to infer discriminatory intent. Consequently, because a jury may find illegal discrimination upon nothing more than a prima facie case and pretext, such a showing

---

medical records establish that Dreesen first learned of her pregnancy when a positive urine pregnancy test was performed on December 14, 2007, *after* Smith allegedly acknowledged his awareness of Dreesen's second pregnancy.") (emphasis in original). The record, however, indicates that the December 14 pregnancy test was the last of multiple positive home pregnancy tests conducted by Ms. Dreesen. *See* Docket No. 34-6 ("Dreesen Aff.") at 1, ¶ 5.

at the summary judgment stage is sufficient to get the case to the jury.") (emphasis in original); *see also Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008) ("To defeat . . . summary judgment, 'the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief.'" (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir. 1997))).

"Failure to come forward with evidence of pretext after the employer articulates a legitimate nondiscriminatory reason for its action will entitle the defendant to judgment." *Atchley v. Nordam Group, Inc.*, 180 F.3d at 1149. Plaintiff has come forward with such evidence. For one, Mr. Smith was "not sure" what the grounds for termination would be when Mr. Whipple asked him to identify them. Docket No. 34-17. Mr. Smith suggested that they could eliminate or re-classify her job, which seems to refer to the means of eliminating her position, but does not state the reason for doing so.[7] The only reasons that defendant has identified are that Ms. Dreesen was not meeting her budget goals, grounds that, the evidence shows, applied to all of her colleagues.

Moreover, Ms. Dreesen argues that the Agency has changed its rationale for her termination, citing the Agency's allegedly inconsistent claims that (a) her position was eliminated and (b) she performed her job poorly. Defendant argues that it is not inconsistent to claim both that Ms. Dreesen was terminated for poor performance and for cost cutting reasons. The Agency represents that it "eliminated Dreesen's position because she did not generate sufficient income to justify retaining her position." Def.'s

---

[7]The record reveals that Mr. Smith considered various ways to terminate her, including bringing in a competitor for her job, demoting her, or waiting additional time in the hope of more easily being able to cite poor performance.

Reply [Docket No. 47] at 10. While as an abstract proposition those two positions are not necessarily contradictory, they pose problems for the Agency's position. For one, the Agency contends, as noted above, that Ms. Dreesen could not make out a prima facie case because her position no longer exists. Now it argues that it eliminated the position *because* of her individual performance, thus conceding that the decision to eliminate the position was the functional equivalent of terminating her for inadequate performance.

The Agency has not identified any inadequate performance or other employment problems with Ms. Dreesen.[8] All the record shows in regard to her performance is that Ms. Dreesen, like all her colleagues, was failing to meet her revenue goals by some unspecified amount in a struggling industry. The only other evidence relating to her performance is positive. And, in relation to cost cutting, the evidence shows that additional vice presidents were hired within a year of her termination, despite testimony that the business continued to decline.[9] The Court is satisfied that the record contains sufficient evidence for a jury to find the proffered reason for termination was pretextual.

"So long as plaintiff has presented evidence of pretext (by demonstrating that the

---

[8]As noted above, the Agency did not challenge plaintiff's prima facie case on the grounds that she was not doing satisfactory work or was otherwise unqualified.

[9]It is worth noting that plaintiff also has put forward at least some evidence indicating Mr. Smith's and Mr. Whipple's unhappiness regarding her first maternity leave. *Cf. Plotke v. White*, 405 F.3d 1092, 1107 (10th Cir. 2005) ("Accordingly, we have held that gender-based comments by a plaintiff's supervisor can be relevant evidence of pretext demonstrating that the supervisor had 'preconceived notions premised on [the plaintiff's] gender' and 'ultimately terminated her based at least in part on his gender bias,' even where such comments were not directly limited to the termination decision.").

defendant's proffered non-discriminatory reason is unworthy of belief) upon which a jury could infer discriminatory motive, the case should go to trial." *Plotke*, 405 F.3d at 1103.

### B. FMLA

That leaves plaintiff's claim that the Agency interfered with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* The FMLA provides "up to twelve weeks of unpaid leave . . . for serious health conditions and reinstatement to the former position or an equivalent one upon return from that leave." *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006). The "birth of a son or daughter" entitles an employee to such leave. 29 U.S.C. § 2612(a)(1)(A).

"Courts have recognized two theories for recovery on FMLA claims under § 2615, the retaliation or discrimination theory and the entitlement or interference theory." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002). Plaintiff advances her claim solely under an interference theory of liability.[10] "To establish an FMLA interference claim, 'the plaintiff must demonstrate: (1) that . . . she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with . . . her right

---

[10]Although plaintiff's FMLA claim is entitled "Unlawful Discrimination in Violation of the FMLA," Compl. [Docket No. 1] at 7, she alleges that the Agency "terminated [her] employment in order to interfere with [her] rights under the FMLA." *Id.* at 7-8, ¶ 28. Moreover, in response to defendant's motion for summary judgment, plaintiff cites cases arising under both theories, but relies on the elements of a prima facie interference claim. The Court finds that plaintiff appears to be attempting to advance her claim on an interference theory of liability. While plaintiff's conflation of the analyses under the two theories could be interpreted as an attempt to advance her claims under both theories, the Court declines any implicit invitation to unravel her arguments sufficiently to address any potential discrimination/retaliation theory of liability. For the reasons discussed in the main text, the Court is satisfied that defendant has established its entitlement to summary judgment on plaintiff's claim of interference with FMLA rights.

to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her rights.'" *DeFreitas v. Horizon Inv. Management Corp.*, 577 F.3d 1151, 1160 (10th Cir. 2009). The parties do not dispute that Ms. Dreesen had been employed long enough to be eligible for leave and that, if she had remained employed with the Agency until giving birth, she would have been entitled to FMLA leave. Defendant argues that, in light of plaintiff's failure to provide notice of a desire to take leave, there is no evidence that the termination was related to "the exercise or attempted exercise of [plaintiff's] rights." *DeFreitas*, 577 F.3d at 1159.

Plaintiff does not dispute that she failed to make a request for leave. Plaintiff's failure to provide notice does not necessarily establish, as a matter of fact, that the adverse action was not related to an expected attempt to exercise FMLA rights. It does, however, implicate the affirmative notice requirements the FMLA places upon employees to invoke substantive rights and the corresponding responsibilities such notice places on employers. Plaintiff does not address what actions she took to invoke her FMLA rights, instead focusing on allegations relating to defendant's intent, which are not central to an interference theory. "The interference or entitlement theory is derived from the FMLA's creation of substantive rights. If an employer interferes with the FMLA-created right to medical leave . . ., a deprivation of this right is a violation regardless of the employer's intent." *Smith*, 298 F.3d at 960. The Court, therefore, will engage in the more relevant analysis of whether plaintiff triggered any entitlements with which the Agency interfered.

As defendant points out, the Tenth Circuit has stated that the "employer's duties [under the FMLA] are triggered when the employee provides enough information to put

12

the employer on notice that the employee may be in need of FMLA leave." *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (10th Cir. 1999). The *Browning* court went on to say that the "employee need not specifically mention FMLA leave, but must state that leave is needed." *Id.* Defendant argues that it cannot be found to have interfered with Ms. Dreesen's rights under the FMLA because she did not "provide some information to the [the Agency] that would put [the Agency] on actual notice that [she] anticipated requesting or needing leave." Def.'s Reply at 12. While it is arguable that defendant did have information that might have led it to anticipate a future request for leave, the Court finds, at least in relation to interference with substantive rights, that the FMLA requires at least some affirmative conduct by plaintiff to invoke those rights. *See* 29 C.F.R. § 825.302(c) ("An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave.").[11] At the time she was terminated, plaintiff had not yet provided any notice that she would invoke her right to take leave, thus triggering a duty not to interfere with her entitlement.[12] Plaintiff, therefore, cannot

---

[11]*Cf. Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 852 (7th Cir. 2008) ("There is some authority for the idea that an employee's conduct can put an employer on notice of the need for leave. In those cases, an employer had adequate notice of an employee's need for intermittent leave based on a sudden change in circumstances. However, both those cases involved dramatic and sudden changes in an employee's behavior, and *requests for at least minimal leave time.*") (citations omitted and emphasis added).

[12]In arguing that she has made out a prima facie case, plaintiff argues that she was "eligible" for FMLA leave. There is no dispute she was eligible to receive leave, in that she had worked for the Agency long enough, but she does not address whether and when she became entitled to take that leave due to a qualifying condition.

proceed on a theory that the Agency interfered with a statutory entitlement.[13]  Because that is the sole theory of FMLA liability upon which plaintiff relies, *supra* at 11 n.9, defendant is entitled to summary judgment on the FMLA claim.

## IV. CONCLUSION

Consistent with the foregoing, it is

**ORDERED** that defendant's motion for summary judgment [Docket No. 26] is DENIED in part and GRANTED in part.  It is further

**ORDERED** that plaintiff's second claim for relief is dismissed.

DATED March 30, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[13]At the time of the adverse action, plaintiff was still in the early months of her pregnancy, months before any expected need for leave and before plaintiff had indicated any desire to take advantage of leave.  In response to defendant's motion, plaintiff identifies no authority for permitting an interference claim to proceed under such circumstances.  Rather, the evidence supports an inference that the Agency discriminated against her because she was pregnant, as discussed above.  To find that defendant interfered with substantive rights plaintiff never invoked is simply too speculative to support her FMLA claim.  The same evidence she relies upon in support of that claim, however, is central to the pregnancy discrimination claim, which survives summary judgment, insofar as that discrimination was animated at least in part by the expectation that plaintiff would at some point request leave.